IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| JOSE SOTELO and ALLI SALAIS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:21-cv-47 |
| | § | |
| J & P TRUCKING, LLC, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Jose Sotelo ("Sotelo") and Alli Salais ("Salais") (collectively "Plaintiffs") file this Complaint against J & P Trucking, LLC ("Defendant"), showing in support as follows:

## I.      NATURE OF THE CASE

1.      This is a civil action brought by Plaintiffs pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for Defendant's failure to pay Plaintiffs time and one-half their respective regular rates of pay for all hours worked over 40 during each seven-day workweek.

2.      Additionally, Plaintiffs bring a civil action against Defendant for Texas state law claims of quantum meruit and/or money had and money received, or in the alternative, pursuant to the FLSA's minimum wage law, for Defendant's failure to pay Sotelo any remuneration for his last week worked for Defendant, which was approximately January 2, 2021 to January 7, 2021, and for Defendant's failure to pay Salais any remuneration for the week worked of approximately January 2, 2021 to January 7, 2021.

3.      Plaintiffs were employed by Defendant as a manual labor workers in the oilfield. Although Defendant labeled Plaintiffs as 1099 workers/independent contractors for several consecutive years, Plaintiffs were actually employees pursuant to the FLSA.

4.      Plaintiffs seek all unpaid overtime wage related damages available under the FLSA including back overtime wages, liquidated damages, legal fees, costs, and post-judgment interest.

5.      Plaintiffs seek all available damages for Defendant's failure to them any remuneration for one week worked each pursuant to Texas state law claims for quantum meruit and/or money had and money received, or in the alternative, pursuant to the FLSA's minimum wage provisions.

## II.      THE PARTIES, JURISDICTION, AND VENUE

### A.      Plaintiff Jose Sotelo

6.      Sotelo is a natural person who resides in Ector County, Texas. He has standing to file this lawsuit.

### B.      Plaintiff Alli Salais

7.      Salais is a natural person who currently resides in El Paso County, Texas. He has standing to file this lawsuit.

### C.      Defendant J & P Trucking, LLC

8.      Defendant is a domestic limited liability company.

9.      During all times relevant, Defendant has done business in the State of Texas.

10.      Defendant is registered with the Texas Secretary of State to conduct business operations in Texas.

11.      At all times relevant to this lawsuit, Defendant is and has been an "enterprise engaged in commerce" as defined by the FLSA.

12.      At all times relevant to this lawsuit, Defendant employed, and continues to employ, two or more employees.

13.     At all times relevant to this lawsuit, Defendant employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person.

14.     For example, Defendant employed two or more employees who regularly handled, sold, and/or otherwise worked on goods and/or materials in their daily work that are/were moved in and/or produced for commerce. Examples of such goods and/or materials include tools, phones, vehicles, fuel, and personal protection equipment.

15.     On information and belief, at all times relevant to this lawsuit, Defendant has had annual gross sales or business volume in excess of $500,000.

16.     Defendant's principal place of business is 3609 West County Road 140, Midland, Texas 79706.

17.     Defendant may be served with summons through its registered agent, Jesse Dominguez, 3609 West County Road 140, Midland, Texas 79706.

**D.     <u>Jurisdiction and Venue</u>**

18.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

19.     The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

20.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

21.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims on federal law, namely the FLSA.

22.     Venue is proper in this Court because Plaintiffs worked for Defendant in the Midland/Odessa Division of the United States District Court for the Western District of Texas. Furthermore, Defendant's principal place of business is in Midland, Texas.

23.     The claims of Plaintiffs are joined in this lawsuit pursuant to Federal Rule of Civil Procedure 20(a) as those claims against Defendant involve issues which arise out of the same transaction or occurrence/series of transactions or occurrences and involve common questions of law or fact. For example, Plaintiffs worked exclusively for the same Defendant for many consecutive years, were each misclassified as 1099 workers/independent contractors by Defendant, worked for Defendant during the same general time period, performed similar job duties for Defendant, were each generally paid on the same basis as explained *infra*, and were victims of Defendant's practice, policy, and/or plan to not pay them overtime compensation for all hours worked over 40 during each and every workweek in violation of the FLSA.

24.     This Court has supplemental jurisdiction over Plaintiffs' Texas state law quantum meruit and/or money had and money received claims pursuant to 28 U.S.C. § 1367 as the facts relative to those claims form a part of the same case or controversy as the FLSA claims, and Plaintiffs plead FLSA minimum wage claims in the alternative to those Texas state law claims.

### III.     FACTUAL BACKGROUND

25.     Defendant performs oilfield related work in and around Midland, Texas.

26.     Sotelo worked exclusively for Defendant from approximately April 2017 to approximately January 2021.

27.     Salais worked exclusively for Defendant from approximately February 2018 to approximately January 2021.

28.     Plaintiffs performed manual labor related oilfield work for Defendant that included many job duties that could vary by workday and/or workweek. Such job duties included manual

labor at wellsites and/or oilfield locations, delivering pipe, unloading pipe, working in Defendant's shop, retrieving and/or delivering supplies, and other work that might be properly labeled as "roustabout" type work.

29.    Defendant labeled Plaintiffs as 1099 workers/independent contractors. However, Plaintiffs were Defendant's employees under the FLSA at all times relevant to this case.

30.    Defendant paid Plaintiffs on a weekly basis (with the exception of the workweeks identified by Plaintiffs for which they were paid no remuneration).

31.    Defendant exercised control over when and how Plaintiffs performed their work for Defendant. Defendant assigned Plaintiffs the work they were to perform in a given workday and/or workweek. For example, daily work assigned to each of the Plaintiffs generally included the following:

        a.   Manual labor work at a wellsite location/oilfield location for a customer of Defendant's,

        b.   Work delivering and/or unloading pipe,

        c.   Work in Defendant's shop in Midland, Texas performing manual labor such as cleaning, maintenance, and repair work, and/or

        d.   Work driving a pickup truck picking up parts/supplies, delivering parts/supplies, and otherwise doing work known as "hot shotting."

Some workdays and/or workweeks included Plaintiffs respectively performing one or more of the aforementioned types of work. Plaintiffs were instructed by Defendant on how, where, and when to perform that work. Defendant set the methods of pay and rates of pay for Plaintiffs relative to that work. For work at a wellsite/oilfield location of a customer of Defendant's, Plaintiffs were typically paid a percentage of the amount charged to and/or paid by the customer. That percentage

amount was generally 25% of the amount charged to and/or paid by the customer. For shop work and pickup hot shotting type work, Plaintiffs were generally paid on an hourly basis. That hourly rate was typically about $15 per hour. Defendant controlled all aspects of Plaintiffs' work for Defendant so that Plaintiffs were not, respectively, separate or independent economic entities. Rather, Plaintiffs were a part of Defendant's workforce.

32.    Defendant's investments in its business operations vastly exceeded the investment, if any, by the respective Plaintiffs in Defendant's business operations. Defendant provided all tools, supplies, fuel, and vehicles used in connection with Plaintiffs' work for Defendant. Plaintiffs did not advertise for or solicit customers, but instead performed oilfield related work assigned them by Defendant, which included work for customers of Defendant.

33.    Defendant controlled all opportunity for profit and loss. Plaintiffs were paid pursuant to methods and rates set by Defendant as explained in paragraph 31. Plaintiffs did not have any opportunity for "profit" or "loss" as independent economic entities. Instead, they only had the opportunity to earn more wages by performing more work as is typical in an employer-employee relationship.

34.    Plaintiffs' manual labor oilfield work for Defendant did not require or involve a unique skill set or require specialized education.

35.    Plaintiffs' respective work for Defendant in a 1099 worker/independent contractor status was ongoing for many consecutive years. Sotelo worked exclusively for Defendant from approximately April 2017 to approximately January 2021, and work for Defendant was his sole source of earned incomed during that time period. Salais worked exclusively for Defendant from approximately February 2018 to approximately January 2021, and work for Defendant was his sole source of earned incomed during that time period.

36.     Plaintiffs routinely worked more than 40 hours per seven-day workweek for Defendant. However, Defendant did not pay Plaintiffs time and one-half their respective regular rates of pay when they worked more than 40 hours in any seven-day workweek.

37.     Plaintiffs were employees under the FLSA when they worked for Defendant. Defendant's failure to pay Plaintiffs time and one-half their respective regular rates of pay for each and every hour worked over 40 in all applicable seven-day workweeks is a violation of the FLSA.

38.     For the workweek of approximately January 2, 2021 to approximately January 7, 2021, Sotelo performed work for Defendant, but was not paid any remuneration for that work by Defendant. The total remuneration for that work should have been approximately $3,200.00.

39.     For the workweek of approximately January 2, 2021 to approximately January 7, 2021, Salais performed work for Defendant, but was not paid any remuneration for that work by Defendant. The total remuneration for that work should have been approximately $990.00.

## IV.     CONTROLLING LEGAL RULES

### A.     FLSA

40.     The FLSA states that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

41.     The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at … not less than … $7.25 an hour." 29 U.S.C. § 206(a)(1)(C).

42.     "The FLSA defines an employee as any individual employed by an employer." *Lovo v. Express Courier Intl., Inc.*, 4:16-CV-853-Y, 2019 WL 387367, at *2 (N.D. Tex. Jan. 30, 2019) (citing 29 U.S.C. § 203(e)(1) (brackets and quotations omitted)). "Employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* (citing 29 U.S.C. § 203(d)). "[E]mploy means to suffer or permit to work." *Id.* (citing 29 U.S.C. § 203(g) (quotations omitted)). Accordingly, "the definition of employee under the FLSA is particularly broad." *Id.* (citing *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008) (brackets omitted)).

43.     Whether an individual is an employee, who is covered by the FLSA's provisions, as opposed to an independent contractor, who is not covered by the FLSA, is determined by the economic realities test. *Hopkins*, 545 F.3d at 343. The purpose of the economic realities test is to determine whether "the worker is economically dependent upon the alleged employer or is instead in business for himself." *Id.*

44.     District Courts within the Fifth Circuit consider the following five factors in assessing the economic reality of the working relationship: (1) the degree of control exercised by the alleged employer, (2) the extent of the relative investments of the worker and the alleged employer, (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer, (4) the skill and initiative required in performing the job, and (5) the permanency of the relationship. *Id.* at 343 (*citing Herman v. Express Sixty-Minutes Delivery Serv., Inc.,* 161 F.3d 299, 303 (5th Cir. 1998). The Fifth Circuit further noted that: "[n]o single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind." *Id*. (*citing Herman*, 161 F.3d at 303 and *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043-44 (5th Cir. 1987)).

45.     Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. § 516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

46.     Under the FLSA's Continuous Workday Rule, "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked." 29 C.F.R. § 790.6.

47.     "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

48.     An employee is employed for purposes of the FLSA if the employer has "knowledge, actual or constructive, that [s]he was working." *Mack v. Avara Cmty. Health Servs.*, No. 3:13-CV-1976-P, 2016 U.S. Dist. LEXIS 129266, at *3-4 (N.D. Tex. Feb. 5, 2016) (Solis, J.) (*citing Newton,* 47 F.3d at 748). "Constructive knowledge exists if by exercising reasonable diligence an employer would become aware that an employee is working overtime." *Von*

*Friewalde v. Boeing Aero. Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009) (quotations and citation omitted).

49. The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

50. With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

51. "Any employer who violates the provisions of [29 U.S.C. § 206] or [29 U.S.C. § 207] … shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. … The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

**B.**    **Quantum Meruit and Money Had and Money Received**

52. Quantum meruit is an equitable remedy based on the promise implied by law to pay for beneficial services rendered and knowingly accepted. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990). To recover under quantum meruit, it must be established that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 917 (Tex. App.

Dallas 2008) (citing *Vortt,* 787 S.W.2d at 944; *Bashfara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985)).

53.    "Money had and received is an equitable action that may be maintained to prevent unjust enrichment when one person obtains money which in equity and good conscience belongs to another." *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App. Fort Worth 2012, no pet. h.) (*citing Staats v. Miller*, 243 S.W.2d 686, 687 (1951); *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex. App.—Fort Worth 2005, no pet.); *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ) (stating that cause of action for money had and received belongs conceptually to doctrine of unjust enrichment)). To succeed in a claim for money had and received, it must be shown that the defendant holds money or its equivalent that, in equity and good conscience, belongs to the plaintiff. *Best Buy v. Barrera,* 248 S.W.3d 160, 162-163 (Tex. 2007) (per curiam); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.,* 358 S.W.3d 808, 813 (Tex. App.--Dallas 2012, no pet. h.). The cause of action for money had and received is "less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which … belongs to the plaintiff." *H.E.B.,* 369 S.W.3d at 507.

## V.    PLAINTIFFS' CLAIMS

54.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

55.    Defendant is and/or has been an eligible and covered employer under the FLSA in 2017, 2018, 2019, 2020, and 2021. 29 U.S.C. § 203(d).

56.    Defendant is and/or has been an enterprise engaged in commerce under the FLSA during 2017, 2018, 2019, 2020, and 2021. 29 U.S.C. § 203(s)(1)(A).

57.    Plaintiffs were employees of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

58.     When Plaintiffs worked for Defendant, they were each economically dependent on Defendant as opposed to being in business for themselves. As such, they were employees of Defendant's pursuant to the FLSA's economic realities test. *Hopkins*, 545 F.3d at 343.

59.     Plaintiffs were covered employees under 29 U.S.C. § 206(a) and 29 U.S.C. § 207(a)(1).

60.     Defendant did not maintain an accurate number of the daily and weekly hours worked respectively by Plaintiffs for Defendant. 29 C.F.R. § 516.2.

### A.     **FLSA Overtime Wage Claims**

61.     Plaintiffs each routinely worked in excess of 40 hours per seven-day workweek as employees of Defendant's. However, Defendant did not pay Plaintiffs time and one-half their respective regular rates of pay for any hours worked over 40 in any seven day workweek when Plaintiffs worked for Defendant.

62.     The failure of Defendant to pay Plaintiffs time and one-half their respective regular rates of pay for each and every hour worked over 40 in a seven-day workweek is a violation of the FLSA.

63.     Defendant's violations of the FLSA are and/or were willful within the meaning of 29 U.S.C. § 255(a). Defendant was aware that Plaintiffs regularly worked more than 40 hours per seven-day workweek without being paid any overtime premium pay for those overtime hours worked. Furthermore, Defendant intentionally labeled Plaintiffs as 1099 workers/independent contractors.

64.     Plaintiffs seeks all damages available for Defendant's failure to timely pay all overtime wages owed.

### B.     **Quantum Meruit and/or Money Had and Money Received Claims, or in the Alternative, FLSA Minimum Wage Claims**

65.     Defendant failed to pay Sotelo any remuneration for his last week worked for Defendant, which was approximately January 2, 2021 to approximately January 7, 2021. Sotelo worked many hours during that workweek for Defendant that were not compensated.

66.     Defendant failed to pay Salais any remuneration for the week worked of approximately January 2, 2021 to approximately January 7, 2021. Salais worked many hours during that workweek for Defendant that were not compensated.

67.     Relative to each of the workweeks that Plaintiffs performed work for Defendant, but received no corresponding remuneration, they each provided valuable services to Defendant performing work assigned them by Defendant, Defendant allowed and accepted Plaintiffs performance of that work, Defendant enjoyed the benefit of the work performed by Plaintiffs, and Defendant was provided with invoices or invoice type documents by Plaintiffs informing Defendant of the work performed which put Defendant on notice that Plaintiffs expected to be paid for that work, as had been the case for numerous workweeks in the preceding years. Plaintiffs expected to be paid by Defendant for that work and Defendant knew Plaintiffs expected to be paid for that work.

68.     Relative to each of the workweeks that Plaintiffs performed work for Defendant, but received no corresponding remuneration, Defendant holds money or its equivalent that, in equity and good conscience, belongs to the Plaintiffs.

69.     Pleading in the alternative to their claims for quantum meruit and/or money had and money received, Plaintiffs seek FLSA unpaid minimum wages for each and every hour they worked relative to each of the workweeks that they performed work for Defendant, but received no corresponding remuneration. Plaintiffs seek all other available damages under the FLSA for

FLSA minimum wage violations including liquidated damages, legal fees, costs, and post-judgment interest.

## VI.    DAMAGES AND PRAYER

70.    Plaintiffs ask that the Court issue a summons for Defendant to appear and answer, and that Plaintiffs be awarded a judgment against Defendant and/or order(s) from the Court for the following:

a.   All damages allowed by the FLSA, including unpaid overtime wages,

b.   Liquidated damages in an amount equal to FLSA unpaid overtime wages,

c.   Legal fees (relative to FLSA claims),

d.   Costs (relative to FLSA claims),

e.   Post-judgment interest (relative to FLSA claims),

f.   Damages for weeks in which Plaintiffs worked for Defendant but received no corresponding remuneration from Defendant pursuant to Texas state law claims for quantum meruit and/or money had and money received, or in the alternative, all damages allowed under the FLSA for unpaid minimum wages (including unpaid minimum wages, an equal amount thereto for liquidated damages, legal fees, costs, and post-judgment interest), and/or

g.   All other relief to which Plaintiff are justly entitled.

Date: March 30, 2021.

Respectfully submitted,

By:    s/ Allen R. Vaught
       Allen R. Vaught
       Attorney-In-Charge
       TX Bar No. 24004966
       Vaught Firm, LLC
       1910 Pacific Ave., Suite 9150
       Dallas, Texas 75201
       (972) 707-7816 – Telephone
       (972) 591-4564 – Facsimile
       avaught@txlaborlaw.com

ATTORNEY FOR PLAINTIFFS